IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

THE WHITING-TURNER CONTRACTING
COMPANY,

     Plaintiff,

     v.

CAPSTONE DEVELOPMENT CORP.,
*et al.*,

     Defendant.

CIVIL NO.: WDQ-12-3730

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## MEMORANDUM OPINION

The Whiting-Turner Contracting Company ("Whiting-Turner" or
"Contractor") sued Capstone Development Corp. ("Capstone" or
"Developer") and Capstone Development Partners, LLC ("CDP") for
breach of contract.  Pending are Whiting-Turner's motion for
partial summary judgment, and CDP's motion to dismiss the
amended complaint.[1]  For the following reasons, Whiting-Turner's
motion for partial summary judgment will be denied.  CDP's
motion to dismiss will be granted.

---

[1] CDP's motion to dismiss the original complaint (ECF No. 19)
will be denied as moot.

I.   Background

A.   Factual Background[2]

Whiting-Turner is a corporation that provides construction management and general contracting services. ECF No. 22 ¶ 1. Whiting-Turner is incorporated in Maryland, with its principal place of business in Baltimore, Maryland. *Id.* Capstone and CDP are incorporated in Alabama and have their principal places of business in Alabama. ECF No. 22 ¶ 3. In 2010, Capstone and Towson University (or "Property Owner") entered into an agreement for Capstone to oversee the development of two student residential halls ("the Project"). ECF No. 36, Ex. 2 ¶ 4 ("Harrison Aff.").[3] On March 19, 2010, Capstone and Whiting-Turner executed a contract (the "Contract") for Whiting-Turner

---

[2] The facts are taken from Whiting-Turner's amended complaint, ECF No. 22, Whiting-Turner's motion for partial summary judgment, ECF No. 4, Capstone's response in opposition, ECF No. 36, Whiting-Turner's reply, ECF No. 39, CDP's motion to dismiss, ECF No. 26, Whiting-Turner's response in opposition, ECF No. 30, and CDP's reply, ECF No. 35, and their supporting exhibits. In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in h[er] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In reviewing a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] Joseph F. Harrison was Capstone's Vice President from 1997 until the end of 2011. Harrison Aff. ¶ 3.

to serve as construction manager for the Project. ECF No. 4, Ex. 3 ¶ 2 ("Nelson Aff.");[4] ECF No. 4, Ex. 2 ("Contract").

The Contract consists of the Contract Documents, which include the "Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to the execution of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement." Contract, Agreement § 1.1. The Contract indicates the priority among the Contract Documents: "If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern." *Id.* In the event of a conflict or discrepancy among the Contract Documents, the interpretation will be based on the Documents in the following order: "(1) Modifications; (2) The Agreement; (3) The General Conditions of the Contract for Construction; (4) Drawings; and (5) Specifications." Contract, General Conditions § 1.1.2.1.

The Contract requires Whiting-Turner to submit a monthly Application for Payment for completed portions of work. Contract, Agreement § 7.1.1-2. The General Conditions of the Contract provide for the certification of an Application for Payment by Capstone:

---

[4] James Nelson is Whiting-Turner's Project Manager for the Project. Nelson Aff. ¶ 3.

3

The Developer with assistance from the Architect will, within seven(7) days after the receipt of the Contractor's Application for Payment with conditional Partial Lien Waiver/s either issue a Certificate for Payment, with a copy to the Contractor, for such amount as the Developer and Architect determines is properly due, or notify the Contractor in writing of the Developer, Architect, Property Owner and/or Financing Entity's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

Contract, General Conditions § 9.4.1. The issuance of a

Certificate for Payment based on an Application for Payment,

will constitute a *representation by the Developer and Architect to the Property Owner and Financing Entity*, based on the Developer, Architect, Property Owner and/or Financing Entity's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Developer and Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. *The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion*, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Developer and Architect. *The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified.*

Contract, General Conditions § 9.4.2 (emphases added).

The Contract also provides for progress payments to be paid

by Capstone to Whiting-Turner based on the Applications for

Payment and Certificates of Payment. Contract, Agreement § 7.1.

The General Conditions of the Contract provide further detail

regarding progress payments: "After the Developer and Architect have issued a Certificate for Payment, *subject to the approval of the Property Owner and Financing Entity (if required)*, the Developer shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect." Contract, General Conditions § 9.6.1 (emphasis added). If the Application for Payment is received by Capstone by the 20th day of a month, Capstone shall make payment of the certified amount to Whiting-Turner by the 20th the following month. Contract, Agreement § 7.1.3.

The Contract requires Whiting-Turner to perform work on the Project "in accordance with the Contract Documents." Contract, General Conditions § 3.1.2. The Contract further describes when Whiting-Turner's work on the Project is substantially complete:

> Substantial completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Developer can occupy or utilize the Work for its intended use, and governing authorities have issued final authorization for the Developer to occupy the building(s) or designated portions thereof.

Contract, General Conditions § 9.8.1. The Contract also contains a provision requiring Capstone to certify the Project as substantially complete:

> When the Work or designated portion thereof is substantially complete, the Developer, with assistance from the Architect, *will prepare a Certificate of Substantial Completion* that shall establish the date

5

> of Substantial Completion, shall establish the
> responsibilities of the Developer and Contractor for
> security, maintenance, heat, utilities, damage to the
> Work and insurance, and shall fix the time within
> which the Contractor shall finish all items on the
> list accompanying the Certificate.

Contract, General Conditions § 9.8.4 (emphasis added). However, the Contract provides that the Project is not substantially complete until approved by Towson University: "The date on which the Project is deemed Substantially Complete for purposes of this Agreement is *the date on which the University determines that the requirements for Substantial Completion of the Project have been satisfied*." Contract, Exhibit C § 2.1 (emphasis added).

Construction on the Project began in the spring of 2010. Harrison Aff. ¶ 11. In May 2011, representatives of Towson University began expressing concern about the quality of Whiting-Turner's work to Capstone.[5] On August 1, 2011, Capstone and Whiting-Turner executed a Certificate of Substantial Completion. Harrison Aff. ¶ 23; ECF No. 4, Ex. 3. Towson University did not sign or approve the Certificate of Substantial Completion. Harrison Aff. ¶ 24; ECF No. 4, Ex. 3. The Certificate also included a "punch list" of "items to be

---

[5] *See* Harrison Aff., Exs. A-D. Emails show a Towson University official contacting Capstone about construction problems, including pictures of defective work. A May 28, 2011 email from a Towson representative states that Whiting-Turner's project management staff "obviously have failed and cannot be trusted." Harrison Aff., Ex. E ¶ 5.

completed and/or corrected." Nelson Aff. ¶ 8; Harrison Aff. ¶ 26. This list included an item requiring Whiting-Turner to "complete [a] test & balance [of the] HVAC in common areas." Harrison Aff. ¶ 27; ECF No. 4, Ex. 3. Towson University issued several subsequent punch lists identifying items that were incomplete, non-conforming work, or unresolved construction deficiencies after it rejected the Certificate of Substantial Completion. See Harrison Aff. ¶¶ 30-36, Exs. G, I.

On August 4, 2011, two inspection reports by Satellite Electric Co., hired by Towson University, identified more than 20 electrical code violations in Whiting-Turner's work. Harrison Aff. ¶ 29, Ex. F. In November 2011, Towson University began complaining of elevated levels of humidity, moisture, and condensation in the residential rooms of the Project, which it attributed to Whiting-Turner's failure to properly test and balance the HVAC system. See Harrison Aff. ¶ 40-46, Exs. M-T.

In November 2011, Whiting-Turner submitted Application for Payment 19 to Capstone, requesting payment of $1,083,458.23 for work done in August 2011. Nelson Aff. ¶ 9; Harrison Aff. ¶ 50. On November 29, 2011, the Architect, Jennifer Jewell, certified the application. Nelson Aff. ¶ 11. Application for Payment 19 was submitted to Towson University for its approval. Harrison Aff. ¶ 52. Towson University approved and funded $781,187.87, and Capstone paid that amount to Whiting-Turner. Id.

Beginning in January 2012, employees of Capstone sent emails about the Project to Whiting-Turner with a CDP signature block, rather than a Capstone signature block. *See* ECF No. 22 ¶ 27; Harrison Aff., Exs. T, X, Y.[6] In March 2012, Whiting-Turner submitted Application for Payment 20 to Capstone, requesting payment of $186,099.03 for work completed in February 2012. Nelson Aff. ¶ 12; Harrison Aff. ¶ 60. On March 23, 2012, Jewell and Harrison certified Application for Payment 20. Nelson Aff. ¶ 14; Harrison Aff. ¶ 60. Towson University approved and funded $107,090.59 of the application, and Capstone paid that amount to Whiting-Turner. Harrison Aff. ¶ 62.

In April 2012, Whiting-Turner submitted Application for Payment 21 in the amount of $138,510.23 for work done in March 2012. Nelson Aff. ¶ 15; Harrison Aff. ¶ 64. On May 11, 2012, the application was certified and forwarded to Towson. Nelson Aff. ¶ 17; Harrison Aff. ¶ 64. Application for Payment 21 was not approved or funded by Towson University, and Capstone did not pay any of the amounts claimed. Harrison Aff. ¶ 66. Similarly, Whiting-Turner submitted Application for Payment 22 in May 2012 and Application for Payment 23 in August 2012 for $70,067.12 and $23,750.36 respectively. Nelson Aff. ¶¶ 18, 21; Harrison Aff. ¶¶ 67, 70. On August 22, 2012, Application for

---

[6] At least one of these employees, Joe Harrison, also corresponded with Whiting-Turner in 2012 using a Capstone signature block. Harrison Aff., Exs. U, W, Z.

Payment 22 was certified. Nelson Aff. ¶ 20; Harrison Aff. ¶ 67.
On August 17, 2012, Application for Payment 23 was certified.
Nelson Aff. ¶ 23; Harrison Aff. ¶ 71. Towson University did not
approve or fund Applications for Payment 22 and 23, and Capstone
did not pay Whiting-Turner. Harrison Aff. ¶¶ 69, 73.

B.    Procedural History

On December 20, 2012, Whiting-Turner sued Capstone and CDP
based on diversity jurisdiction.[7] ECF No. 1. On December 20,
2012, Whiting-Turner moved for partial summary judgment. ECF
No. 4. On February 13, 2013, CDP moved to dismiss for failure
to state a claim. ECF No. 19. On March 4, 2013, Whiting-Turner
amended the complaint. ECF No. 22. On March 14, 2013, CDP
moved to dismiss the amended complaint for failure to state a
claim and for lack of personal jurisdiction. ECF No. 26. On
March 21, 2013, the Court granted a consent motion to stay the
proceedings until April 3, 2013. ECF No. 29. On April 12,
2013, Whiting-Turner opposed CDP's motion to dismiss. ECF No.
30.

On April 18, 2013, the Court lifted the stay. ECF No. 33.
On April 25, 2013, Capstone answered the amended complaint and
asserted a counterclaim for breach of contract and breach of

---

[7] Because there is complete diversity of citizenship among the
parties, and the amount in controversy exceeds $75,000, this
Court has jurisdiction. *See* 28 U.S.C. § 1132(a).

warranty. ECF No. 34. On April 29, 2013, CDP replied to Whiting-Turner's opposition to its motion to dismiss. ECF No. 35. On May 6, 2013, Capstone opposed Whiting-Turner's motion for summary judgment. ECF No. 36. On May 20, 2013, Whiting-Turner answered Capstone's counterclaim. ECF No. 38. On May 23, 2013, Whiting-Turner replied to Capstone's opposition to its motion for summary judgment. ECF No. 39.

II.  Analysis

    A.  Legal Standard

        1.  Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[8]  In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

---

[8] Rule 56(a), which "carries forward the summary-judgment stan-dard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

### 2. Lack of Personal Jurisdiction

Under Fed. R. Civ. P. 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction. The party asserting the claim bears the burden of proving personal jurisdiction. *See Combs. v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If the court determines the issue of personal jurisdiction without an evidentiary hearing, and relies only on the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). In determining whether the *prima facie* showing has been made, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

11

B.   Whiting-Turner's Motion for Summary Judgment

Whiting-Turner asserts that it is entitled to summary judgment under the Contract because Capstone failed to make payments in the amounts authorized by Certificates for Payment Nos. 9 to 23.  ECF No. 4 at 13.  First, Capstone argues that the Contract does not require it to pay the amounts claimed by Whiting-Turner because Towson University did not approve the Certificates for Payment for those amounts.  ECF No. 36 at 15. Payment Applications 9 to 23 were submitted after Towson had rejected the Certificate of Substantial Completion.  *See* Nelson Aff. ¶ 9; Harrison Aff. ¶ 24.  Towson University only approved a portion of the amounts in Applications for Payment 19 and 20. Harrison Aff. ¶¶ 52, 62.  Towson University rejected Applications for Payment 21, 22, and 23 in their entirety.  *Id.* ¶¶ 66, 69, 73.

The General Conditions section of the Contract states: "After the Developer and Architect have issued a Certificate for Payment, *subject to the approval of the Property Owner and Financing Entity (if required)*, the Developer shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect."  Contract, General Conditions § 9.6.1 (emphasis added).  Capstone contends that this provision creates a condition precedent to payment on the Certificates for Approval such that payment is subject to

12

the approval of Towson University. ECF No. 36 at 15. Whiting-Turner argues there is a discrepancy between this interpretation of General Conditions § 9.6.1, and § 7.1 of the Agreement which governs the time limits for Capstone to pay certified amounts to Whiting-Turner. *See* ECF No. 39 at 3-4; Contract, Agreement §§ 7.1, 7.1.3. Whiting-Turner asserts that because there is a discrepancy, to the extent that § 9.6.1 creates a condition precedent to payment, it is superseded by the progress payment language in the Agreement under the priority provision of the Contract. ECF No. 39 at 4; Contract, General Conditions § 1.1.2.1.

It is a well-established rule of contract construction that when "two provisions of a contract are seemingly in conflict, they must, if possible, be construed to effectuate the intention of the parties as collected from the whole instrument, the subject matter of the agreement, the circumstances surrounding its execution, and its purpose and design." *Chew v. DeVries*, 213 A.2d 743, 744 (Md. 1965). Accordingly, "if a reconciliation can be effected by a reasonable interpretation, such interpretation should be given to the apparently repugnant provisions, rather than nullify any." *Id.* at 744-45.

Here, § 9.6.1 of the Contract's General Conditions provides that Capstone shall make progress payments "in the manner and within the time provided in the Contract Documents" after

issuing a Certificate of Payment, "subject to the approval of the Property Owner and Financing Entity (if required)." Whiting-Turner argues that this provision is inconsistent with § 7.1.3 of the Agreement which requires that payment must be made within 30 days of the receipt of the Application for Payment and therefore should be "trumped" by the language of § 7.1. *See* ECF No. 39 at 4; Contract, Agreement § 7.1.3. Whiting-Turner argues that approval by Towson University would render this time limit meaningless and "[n]othing in § 7.1 makes approval of Towson a condition precedent." *See* ECF No. 39 at 4.

These provisions are not in direct conflict requiring one provision to be nullified; they may be reconciled by reasonable interpretation. Section 9.6.1 requires Capstone to make payments in the manner and time provided in the Contract Documents, which would include the time limits required by § 7.1.3, subject to approval by Towson University and the Financing Entity (if required). Viewing the terms and circumstances of the Contract as a whole also supports the interpretation that § 9.6.1 is not superseded by § 7.1. The subject matter of the Contract is the construction of two residential halls for Towson University. *See* Contract, Agreement at 2. Other provisions of the Contract give Towson University similar approval power, including provisions requiring Towson's approval for all agreement modifications and

change orders, and for determining when the Project is considered substantially complete. *See* Contract, Ex. C §§ 1, 2.1. Accordingly, Capstone's interpretation of § 9.6.1 is not in conflict with the other provisions of the Contract.

The next question is whether § 9.6.1 creates a condition precedent. A condition precedent is "a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises." *Chirichella v. Erwin*, 310 A.2d 555, 557 (Md. 1973). "The question of whether a stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they employed and, in case of ambiguity, after resort to the other permissible aids to interpretation." *Id.* Phrases such as "provided that" and "subject to" are commonly used to indicate performance is conditional.[9]

In Maryland, the interpretation of a contract is a question of law, and courts interpret contracts objectively. *See Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 283 (Md. 2008). The court seeks to ascertain and effectuate the intent of the contracting parties. *See Phoenix Servs. Ltd.*

---

[9] *See All State Home Mortg., Inc. v. Daniel*, 977 A.2d 438, 447 (Md. Ct. Spec. App. 2009) (*quoting Aronson & Co. v. Fetridge*, 957 A.2d 125, 144 (Md. Ct. Spec. App. 2008)).

*P'ship v. Johns Hopkins Hosp.*, 892 A.2d 1185, 1223 (Md. Ct. Spec. App. 2006). If the contract is unambiguous, the court must give effect to its plain meaning and not the subjective intent of the parties. *See Nova Research, Inc.*, 952 A.2d at 283. "A contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Id.* A contract is not ambiguous merely because parties do not agree on the meaning of a term or provision. *See Floyd v. Mayor & City Council of Baltimore*, 946 A.2d 15, 48 (Md. Ct. Spec. App. 2008).

In determining whether a contract provision is susceptible to more than one meaning, the Court may consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution. *Floyd*, 946 A.2d at 48-49. The primary consideration in interpreting the terms of a contract is the "customary, ordinary, and accepted meaning of the language used."[10] "[U]nless the extrinsic evidence is undisputed or only one reasonable meaning can be ascribed to the language when viewed in context, summary judgment is not appropriate in a case involving interpretation of a [contract]."

---

[10] *Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.*, 844 A.2d 460, 469 (Md. 2004) (*quoting Lloyd E. Mitchell, Inc. v. Maryland Cas. Co.*, 595 A.2d 469, 475 (Md. 1991)) (internal quotation marks omitted).

*Labor Ready, Inc. v. Abis*, 137 Md. App. 116, 131 (Md. Ct. Spec. App. 2001).

The terms of § 9.6.1 do not unambiguously provide that Towson University approval is required as a condition precedent to Capstone's payments to Whiting-Turner. The term "subject to" indicates that performance is conditional. *See All State Home Mortg., Inc.*, 977 A.2d at 447. However, the provision states "subject to the approval of the Property Owner and Financing Entity (if required)." Contract, General Conditions § 9.6.1. It is unclear from the plain meaning of the Contract terms whether "if required" refers to both the Property Owner and Financing Entity, or the Financing Entity alone. Although the "last antecedent" rule provides that a qualifying phrase should be construed as referring to its nearest antecedent, in this case "Financing Entity," Maryland courts have not adopted this rule of contract construction. *See Philadelphia Indem. Ins. Co. v. Maryland Yacht Club, Inc.*, 742 A.2d 79, 92 (Md. Ct. Spec. App. 1999). The other provisions in the Contract regarding progress payments do not suggest that Towson University's approval is a prerequisite to payment. *See* Contract, Agreement § 7.1. Thus, if the phrase "if required" applied to "Property Owner" as well, Towson University's approval would not be a condition precedent to Capstone's payment to Whiting-Turner. A reasonably prudent person viewing the Contract as a whole could

interpret the provision as creating a condition precedent to payment only if Towson University's approval was otherwise required. Because the language is susceptible to more than one reasonable meaning, Whiting-Turner's motion for summary judgment will be denied.[11]

Alternatively, Capstone asserts that its performance under the Contract is excused because Whiting-Turner materially breached the Contract by "failing to perform its work in accordance with the plans and specifications." ECF No. 36 at 27. Whiting-Turner contends that it is "implausible" that it materially breached the contract, as evidenced by the certification of the Project as Substantially Complete. ECF No. 39 at 8.

Under Maryland law, a party suing on a contract must prove its own performance, or an excuse for nonperformance, to recover for any breach of contract by an opposing party. *See Collins/Snoops Assocs., Inc. v. CJF, LLC*, 988 A.2d 49, 57-58 (Md. Ct. Spec. App. 2010). A material breach by one party to a contract excuses the other party from performance.[12] A breach is

---

[11] *Cf. Stanbalt Realty Co. v. Commercial Credit Corp.*, 401 A.2d 1043, 1045-47 (affirming denial of summary judgment when qualifying phrase in a contract could be construed two different ways).

[12] *See Final Analysis Commc'n Servs., Inc. v. General Dynamics Corp.*, 253 Fed. App'x 307, 313 (4th Cir. 2007) (*citing Rogers Refrigeration Co., Inc. v. Pulliam's Garage, Inc.*, 505 A.2d 878, 883 (Md. 1986)).

material "if it affects the purpose of the contract in an important or vital way."[13] Whether a breach of contract is material is normally a question of fact, unless "the issue is so clear that it may be decided as a matter of law." *Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 7 A.3d 643, 656-57 (Md. Ct. Spec. App. 2010).

Here, the Contract specifies that Towson University determines whether the Project is substantially complete. *See* Contract, Exhibit C § 2.1. Although Capstone issued a Certificate of Substantial Completion on August 1, 2011, Towson University rejected the Certificate and has not accepted the Project as substantially complete. Harrison Aff. ¶ 24. Whiting-Turner is contractually required to complete all work on the Project "in accordance with the Contract Documents." Contract, General Conditions § 3.1.2. Capstone has provided documentation of Towson University's dissatisfaction with the quality of Whiting-Turner's work on the Project. Harrison Aff., Exs. A-D. An August 4, 2011 inspection report also identifies electrical code violations in Whiting-Turner's work. Harrison Aff., Ex. F. Towson University has complained of continuing moisture problems in the buildings, which it asserts resulted

---

[13] *Jay Dee/Mole Joint Venture v. Mayor & City Council of Baltimore*, 725 F. Supp. 2d 513, 526 (D. Md. 2010) (*quoting Gresham v. Lumberman's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005)) (internal quotation marks omitted).

from Whiting-Turner's failure to properly test the HVAC system. *See* Harrison Aff. ¶¶ 39, 40, 46, 47. Although Whiting-Turner argues that it completed all punch list work on August 15, 2011,[14] additional punch lists were created after this date, and Capstone asserts that items remain open and incomplete. *See* Harrison Aff. ¶¶ 31-36; Harrison Aff., Exs. G-I. Because Whiting-Turner has failed to substantially complete the Project and Capstone provides evidence that the Project was not built in compliance with Contract plans and specifications, there is a genuine dispute whether Whiting-Turner materially breached the Contract, excusing Capstone from performance. Accordingly, Whiting-Turner's summary judgment motion will be denied.

    C.    CDP's Motion to Dismiss

    To exercise personal jurisdiction over a nonresident defendant, a district court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Carefirst of Md., Inc.*, 334 F.3d at 396. Maryland has construed the state's long-arm statute as coextensive with the scope of jurisdiction allowable by due process. *See Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 486 (Md. 2006). "Although the statutory and constitutional inquiries merge, the Court must

---

[14] Nelson Aff. ¶ 24.

address both elements in the personal jurisdiction analysis." *Metropolitan Reg'l Info. Sys., Inc. v. American Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 698 (D. Md. 2012).

Courts have recognized two types of personal jurisdiction: general and specific jurisdiction. *Metropolitan Reg'l Info. Sys., Inc.*, 888 F. Supp. 2d at 699. To exercise general jurisdiction over a defendant, the defendant's activities in the state must be "continuous and systematic." *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). If the cause of action arises out of the defendant's minimum contacts with the forum, the court may exercise specific jurisdiction.[15] In determining whether the exercise of specific jurisdiction comports with due process, a court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst of Md., Inc.*, 334 F.3d at 397.

Here, Whiting-Turner argues that the Court may exercise specific jurisdiction over CDP. ECF No. 30 at 7. Maryland's

---

[15] *See Municipal Mortg. & Equity v. Southfolk Apartments Ltd. P'ship*, 93 F. Supp. 2d 622, 626 (D. Md. 2000) (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

long-arm statute limits specific jurisdiction to claims "arising from any act enumerated [in the statute]." Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). A plaintiff must identify a specific Maryland statutory provision authorizing jurisdiction. *Metropolitan Reg'l Info. Sys., Inc.*, 888 F. Supp. 2d at 698 (internal quotation marks omitted). Here, Whiting-Turner has not identified a specific statutory provision and instead generally argues that this Court may exercise personal jurisdiction over CDP because it conducted business in Maryland. ECF No. 30 at 7. The most applicable provision of the long-arm statute is § 6-103(b)(1), which allows a court to exercise personal jurisdiction over a defendant who "transacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Transacting business under this section "requires actions that culminate in purposeful activity within the state." *Bahn v. Chicago Motor Club Ins. Co.*, 634 A.2d 63, 67 (Md. Ct. Spec. App. 1993) (internal quotation marks omitted).

Here, Whiting-Turner has not sufficiently alleged that CDP engaged in purposeful activity in Maryland. CDP contends that CDP is a separate corporate entity from Capstone, it has not transacted any business in Maryland, it is not a party to the Contract with Whiting-Turner, and it has not assumed Capstone's contractual obligations. ECF No. 19-1 ¶¶ 5, 6, 9-14

22

("Christensen Aff."). Whiting-Turner's assertion that "CDP assumed the obligations and responsibilities of Capstone under the Construction Contract,"[16] is a legal conclusion insufficient to allege that CDP transacts business in Maryland.[17] The Contract requires either party to obtain written consent before assignment of the Contract. Contract, General Conditions § 13.2.1. Whiting-Turner does not allege that it consented to an assignment of Capstone's contractual obligations to CDP. Instead, Whiting-Turner relies on the sporadic use of a CDP signature block by three employees.[18] Whiting-Turner asserts four factual allegations to support its claim that CDP assumed the obligations of Capstone under the Contract: (1) employees began communicating with Whiting-Turner regarding the Project under CDP signature blocks; (2) the employees continued to use

---

[16] ECF No. 22 at 12 ¶ 5.

[17] *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) ("[The Court is] not required, however, to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (internal quotation marks omitted); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.").

[18] The Complaint lists L. Jeff Jones, Joe Harrison, and Courtney J. Corley as employees who used CDP signature blocks. ECF No. 22 ¶¶ 27-29. Emails from Joe Harrison contained the signature block "Capstone Development Corp." in some instances in correspondences with Whiting-Turner during this period, although in some emails the signature block reads "Capstone Development Partners, LLC." *See* Harrison Aff., Exs. T, U, W-Z.

these signature blocks up until the date of the Amended Complaint; (3) the communications related to the Contract and the Project; and (4) one employee responded under a CDP signature block stating, "accept this email as Capstone's official response to your letter." ECF No. 22 ¶¶ 27-29; ECF No. 30 at 5. Whiting-Turner's complaint only identifies actions taken by Capstone on the Project, and appears to rely on the fact that some employees of CDP communicated about the Project to establish CDP's involvement.[19] Whiting-Turner has not alleged any action taken by CDP that culminated in purposeful activity in Maryland.[20] These factual allegations are insufficient to subject CDP to personal jurisdiction under Maryland's long-arm statute.[21] Accordingly, CDP's motion to dismiss will be granted.

---

[19] *See* ECF No. 22 ¶¶ 12-20 (alleging only that Capstone failed to make certified payments); *id.* ¶¶ 27-29 (relying on employee communications to allege CDP's involvement in the Contract); *id.* ¶ 30 ("By taking over essential correspondence with Whiting-Turner regarding the Project . . . CDP assumed the obligations of the Construction Contract in tandem with Capstone.").

[20] To establish personal jurisdiction over a defendant based on transacting business in Maryland, the plaintiff must allege the defendant engaged in conduct "that culminate[s] in purposeful activity within the state." *See Bahn v. Chicago Motor Club Ins. Co.*, 634 A.2d 64, 67-68 (Md. Ct. Spec. App 1993) (defendant transacted business by mailing notices to Maryland plaintiffs, contracting with Maryland plaintiffs, and receiving payments from Maryland); *Mohamed v. Michael*, 370 A.2d 551, 554 (Md. 1977) (transacting business by negotiating in Maryland to settle contract dispute).

[21] *See Rheumatology Nurses Soc., Inc. v. Phoenix Grp. Holdings, LLC*, No. CCB-08-1675, 2009 WL 245233, at *4 (D. Md. Jan. 8,

III. Conclusion

For the reasons stated above, Whiting-Turner's motion for partial summary judgment will be denied. CDP's motion to dismiss will be granted.

_____9/26/13_____
Date

_____
William D. Quarles, Jr.
United States District Judge

2009) (holding that personal jurisdiction under §6-103(b)(1) of Maryland's long-arm statute was not proper against one corporation, Phoenix, when the plaintiffs only alleged specific actions taken by a subsidiary corporation and an officer of both corporations) ("[The plaintiff's] appear to rely solely on the fact that [the employee] was an officer of Phoenix to establish the corporation's involvement, as they do not allege any specific actions taken on behalf of Phoenix.").